UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE FEDOR, | : | CIVIL ACTION NUMBER |
|     PLAINTIFF | : | |
| VS. | : | 3:02-CV-01489 (CFD) |
| | : | |
| JOSEPH KUDRAK, ET AL, | : | |
|     DEFENDANTS | : | MAY 9, 2003 |

**PLAINTIFF'S RESPONSES TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION**

    The undersigned, on behalf of Defendants, Joseph Kudrak, Detective Neil O'Donoghue and Town of Shelton, hereby propounds the following interrogatories to be answered by Plaintiff, **George Fedor**, under oath, within thirty (30) days of the filing hereof insofar as the disclosure sought will be of assistance in the defense of this action and can be provided by the plaintiff with substantially greater facility than could otherwise be obtained.

**INTERROGATORIES**

    1.    Please state your full name and any other name(s) by which you have been known, your date of birth, home address, business address and your title.

**RESPONSE:**

**George Matthew Fedor, 03/12/38, 51 Applewood Drive, Shelton, CT 06484, retired.**

    2.    If you have you made any statements to any person regarding any of the events or happenings alleged in the complaint, please indicate the date on which statement or statements were taken, the names and addresses of the person or persons who took such statement or statements, the names and addresses of any persons present when such statement or statements were taken, whether such statement or statements were written, made by recording device, or taken by court reporter or stenographer; and the name and address of each person having custody or a copy or copies of such statement or statements.

**RESPONSE:**

**Attorney Edward Giacci, no relation, 375 Bridgeport Avenue, Shelton, CT 06484.**

      3.     Identify by name, address and relationship to you, all persons assisting you in the preparation of responses to these interrogatories and requests for production

**RESPONSE:**

**George Fedor III, my son, 5904 Clark's Fork Drive, Raleigh, NC 27616, formerly of Naugatuck and Seymour, CT, at the time of these encounters with the Shelton Police Department, June and August of 1999.**

      4.     Identify by name, address and relationship to you, each witness you intend to call at trial.

**RESPONSE:**

**Attorney Edward Giacci, no relation, 375 Bridgeport Avenue, Shelton, CT 06484. Attorney Giacci has been my attorney since approximately June 9, 1999, and knows every fact and occurrence with the Shelton Police on June 9, 10 and August 28, 1999. Attorney Giacci is aware of the fact that I was denied a police escort to my home at 51 Applewood Drive in Shelton which led to my being arrested by the Shelton Police and prosecuted by the State of Connecticut. Attorney Giacci represented me from June 9, 1999 until February, 2002.**

      5.     If any of the individuals named in response to Interrogatory #4, have given any statement or statements concerning the subject matter of your complaint or alleged damages, please indicate the date on which statement or statements were taken, the names and addresses of the person or persons who took such statement or statements, the names and addresses of any persons present when such statement or statements were taken, whether such statement or statements were written, made by recording device, or taken by court reporter or stenographer, and the name and address of each person having custody or a copy or copies of such statement or statements.

**RESPONSE:**

**I am unaware of any statements given by Attorney Giacci, other than signed court documents and confidential attorney-client correspondences.**

      6.     Identify each person not identified in Interrogatory #4 whom you believe to have knowledge of any relevant facts with respect to the subject matter of this lawsuit

(including, but not limited to, the occurrence in question, any investigation of the occurrence in question, or any of the causes of action and damages alleged in your Complaint) and state generally what information you or your attorneys believe each person has knowledge of.

**RESPONSE:**

**Mr. Norman Rosenthal, 14 Trails End Road, Wilton, CT 06897.  Mr. Rosenthal was Carol Gorman's second husband and encountered the same abuses from Carol Gorman such as being removed from his home in Norwalk, CT via a restraining order.  The restraining orders that Mr. Rosenthal and I received were both unwarranted (without basis) and attests to the character of Carol Gorman and her dealings with police departments.**

7.      For all individuals whom you intend to call as expert witness(es) at trial, please provide their names and addresses, the subject matter on which each expert witness is expected to testify, the substance of the facts and opinions to which each expert witness is expected to testify, and a summary of the grounds for each opinion of each expert witness expected to testify.

**RESPONSE:**

**My attorney has not determined if an expert will be called in this case.**

8.      Please identify the date, time, location and substance of each meeting, discussion, conference or telephone conversation between the plaintiff and any defendant and/or employee and/or agent of the defendants.

**RESPONSE:**

**Officers Castertino (father and son) who denied me the police escort I was legally entitled to on June 9, 1999.  The junior Castertino came to my home early in the morning, around 8:30 a.m., to present the restraining order and physically remove me from my home and who then arrested me at approximately 12:00 p.m. and put me in jail for having gone back into my home after he and his father denied me a police escort.  I went back into my home to take my needed medication which I must take every morning.**

**June 10, 1999, after being allowed to go back into my home, via a court order, I was only allowed to go back for 15 minutes to obtain both personal and work-related belongings as I was removed from my home the day before with on the**

**shirt on my back. I was told by the Shelton Police that in order for the police to escort me for a longer period of time I would have to hire a police officer at time and one half pay at a time that was convenient for the Police. That time would be a Saturday morning, for two hours on August 28, 1999. In defiance of two separate court orders issued for June 10 and August 28, 1999, which allowed me complete access to my home, I was not allowed to enter a locked office room which contained all my personal and work-related files and belongings. Again, on August 28, 1999, when I was escorted by Officer Kudrak who acted like Carol Gorman's escort and protector instead of mine - since I had hired him - the officer denied me the right to take photographs as I had been instructed to do by my attorney, Edward Giacci. Officer Kudrak denied me the right to go into the locked office room as ordered by the Court. Officer Kudrak denied me the right to remove my family silverware set, also as ordered by the Court pertaining to my personal possessions.**

**In August of 2000, I met with Detective O'Donoghue, accompanied by Attorney Giacci, in the Shelton Police station to discuss items stolen from my home. In the course of the discussion he became overbearing and threatening, as witnessed by my attorney. Essentially, he said that he asked Carol Gorman if she removed any items from my home. She said no. He acted as if he did not believe me, but believed her story instead. Prior to meeting with Det. O'Donoghue he told me on the telephone that the Shelton Police Department doesn't like to get involved in cases between husbands and wives or ex-spouses as well. He clearly acted neither concerned nor interested in getting involved.**

9.  List each item of expense which you claim to have incurred as a result of the defendants' alleged action, as set forth in the complaint, the amount thereof and state the name and address of the person or organization to whom each item has been paid or is payable.

## RESPONSE:

**My civil rights were denied me in eight instances on the above dates. A price tag cannot be placed upon this. The items stolen from my home do not involve the Shelton Police, other than the loss of portions of my silverware set and the fact that it was placed in jeopardy and therefore mistreated by Carol Gorman. Actions and inaction of the named members of the Shelton Police Department with regard to denying me complete access to my home, granted me by Court order, as well as allowing me to take photographs of my home contributed to my not knowing the full extent of stolen property to report in another case. Additionally, I was**

**made to hire an attorney for the criminal charges filed against me.**

10.   Please itemize the basis for your claim of damages.

**RESPONSE:**

**I was denied a police escort on June 9, 1999, by Officers Casertano;**
**I was arrested for violating a restraining order;**
**Denied my right to complete access to my home and belongings as ordered by the Court on June 10 and August 28, 1999;**
**Denied the right to take photographs inside my home as instructed by my attorney;**
**Denied the right to remove a complete set of sterling silverware as allowed by Court order and because of this several large silverware pieces were missing when the set was returned four months later, as well as the aforementioned damage.  Nothing was missing when I inspected the set on August 28, 1999, while in the presence of Officer Kudrak.  I was willing to sign a statement in front of him to that effect;**
**Denial of my right to be assisted by my son inside my home as well as his home of 24 years.  He was ordered by Officer Kudrak to stay outside on the driveway. Officer Kudrak acted as if he were under orders from Carol Gorman, when in fact he had been <u>hired</u> to escort me;**
**Denial of my right to a police escort to re-enter my home simply to get my needed medication got me involved in the State of Connecticut;**
**Not taking any action whatsoever in recovering my stolen property and choosing not to believe me, threatening words from Detective O'Donoghue.**


11.   State the names and address of all persons known to you who were present with you at the time of the incidents or who observed or witnessed all or part of the incidents referenced in the complaint.

**RESPONSE:**

**Carol Gorman, on June 9, 10 and August 28, 1999;**
**My son, George Fedor, on June 10 and August 28, 1999;**
**Attorney Edward Giacci, was present with me in August of 2000.**

12.	If any of the individuals named in response to Interrogatory #11, have given any statement or statements concerning the subject matter of your complaint or alleged damages, please indicate the date on which statement or statements were taken, the names and addresses of the person or persons who took such statement or statements, the names and addresses of any persons present when such statement or statements were taken, whether such statement or statements were written, made by recording device, or taken by court reporter or stenographer, and the name and address of each person having custody or a copy or copies of such statement or statements.

**RESPONSE:**

**My son, George Fedor, gave statements to Attorney Giacci relative to the events of June 9, 10 and August 28, 1999.**

13.	Please identify any and all of the photographs in your possession or control or in the possession and control of your attorney which depict either the incident scene, or the items referenced in the complaint, by stating the dates on which such photographs were prepared, the number of photographs taken, the date on which each of the photographs were taken, and the name and address of any person, other than an expert who will not testify at trial, who took or prepared them.

**RESPONSE:**

**I was not allowed to take any photographs or videotape of my possessions.**

14.	Identify the items the plaintiff was unable to retrieve, the parts of the sterling silverware set that were missing, and in what way the set had been mistreated, as referenced in paragraph 17 of the complaint, including the name and address of the manufacturer, name, model number, the individual or entity from whom the plaintiff purchased or otherwise acquired each item, the purchase price or value at acquisition, the date of purchase or acquisition, and any other pertinent identifying information.

**RESPONSE:**

**The sterling silverware set was a wedding gift from my parents in 1966 to me and my deceased wife, Joan. I have no idea what they paid for it, nor where it was purchased. The set is Reed & Barton. It is a complete service for eight with nine large serving pieces one of which, a slotted serving spoon, was substituted with another brand, Holmes & Edwards, which is not sterling silver. The word "Deepsilver" appears on the back of the spoon. Three large serving pieces are**

**entirely missing. Every single piece in the set was enclosed and protected within a separate bag especially made for silverware. Each piece had been in it's own slot within a large mahogany box with a drawer for the serving pieces. The set was returned to me and my lawyer on 12/21/99. The set looked as though it had been used a lot in the four months it was in the possession of Carol Gorman. Ms. Gorman defied two Court orders in not returning it to me on August 28, 1999. The set had spots on it and appeared to have been put in a dishwasher. When the set was returned to me not one piece was in it's protective cover. There were no covers in the box.**

15. If you or anyone on your behalf have signed a covenant not to sue, a release or discharge of any claim you had, have or may have against any person, corporation, or other entity, as a result of the allegations in your complaint, please state in whose favor it was given, the date thereof, and the consideration paid to you for giving it.

**RESPONSE:**

**No, not applicable.**

16. If you or anyone on your behalf have agreed or made an agreement with any person, corporation or other entity to limit in any way the liability of such person, corporation or other entity as a result of any claim you have or may have as a result of the allegations of the Complaint, please state in whose favor it was given, the date thereof, and the consideration paid to you for giving it.

**RESPONSE:**

**No, not applicable.**

17. Explain in detail the basis for your allegation that each defendant had a duty to prevent the other defendants from violating the plaintiff's constitutional rights, as stated in paragraph 8 of the complaint and in what way(s) they had an opportunity to act on that duty.

**RESPONSE:**

**Previous stated in # 10 above are the violations of my rights. Officer Kudrak had the duty to enforce my right to complete access to my home as well as the right**

**to remove my very special silverware set and the right to take pictures as instructed by Attorney Giacci . It was his duty not only because he was hired by me to be my escort but to comply with a Court order. Not only did he allow Carol Gorman dictate the terms of the visit on August 28, 1999, he did not instruct her that they both violated a Court order but denied my civil rights as well.**

**Officers Casertano (father & son) both denied my right to a police escort four times alone, three by the son and once by his father. On June 10, 1999, Carol Gorman locked the office room and defied a Court order and was not ordered by the officer to comply with the Court order as well as my civil rights.**

      18.    Describe in detail the orders and modifications of orders obtained by the plaintiff and plaintiff's wife, as referenced in paragraphs 10, 11 and 15 of the complaint, including but limited to the basis for the orders, the dates the orders were entered, the specific restrictions imposed by the orders, and the specific access and rights granted to the plaintiff in accordance with those modifications.

**RESPONSE:**

**Please refer to documents attached hereto. I am not in possession all of the signed court orders as the police took them from me when I presented them to them.**

      19.    Identify the members of the Shelton Police Department to whom the plaintiff presented court orders in June of 1999 and on August 28, 1999, as referenced in paragraph 12 of the complaint.

**RESPONSE:**

**Officer Youd, June 10, 1999;**
**Officer Kudrak, August 28, 1999.**

      20.    Identify the exact date in June of 1999 on which the plaintiff presented court orders to members of the Shelton Police Department, as referenced in paragraph 12 of the complaint.

**RESPONSE:**

**June 10, 1999, to Officer Youd.**

      21.    Describe in detail the circumstances under which the plaintiff presented

court orders to members of the Shelton Police Department in June of 1999, on August 28, 1999, and on any other dates as referenced in paragraphs 12 and 15 of the complaint, including but not limited to the time of day at which the orders were presented, whether the plaintiff was accompanied by anyone at the time the orders were presented, the identity of any witnesses present at that time, and the substance of the conversations which occurred between the plaintiff and members of the Shelton Police Department.

**RESPONSE:**

**On June 10, 1999, I presented the court order to the officer on duty at the Shelton Police Station who told me to go to my house and meet the assigned officer (Youd) at my home. It was in the middle of the afternoon shortly after I left the Superior Court. I was accompanied by my son George. Officer Youd commented to me about the strong odor of alcohol on Carol Gorman' s breath when he first went inside. When she locked herself inside the office room he then commented how I was getting screwed by her and then made imbibing or drinking motions with his hand and arm referring to Carol Gorman being drunk. Officer Youd was very nice but didn't insist to Carol she must open the locked door to the office room.**

**On August 28, 1999, I presented the court order to the officer hired by me to be my escort. I did not know who it was going to be until I met him (Officer Kudrak) at my house on late Saturday morning. That's when I gave him the court order for the first time. It said I could be there for two hours. I was accompanied by my son George. Officer Kudrak studied, not just read, the court order for at least 10 minutes before he even rang the bell. He proceeded inside the house and was inside for at least 15 minutes talking with Carol Gorman before he allowed me to come into the house. Once inside he acted as if he were her escort inside of mine. He was totally opposed to me and uncooperative in every way. He evidently believed whatever she told and instructed him to do. He never enforced the court order.**

      22.    Identify the municipal policy referenced in paragraph 13 of the complaint, including but not limited to whether said policy is a written policy and how the plaintiff became aware of said policy.

**RESPONSE:**

**I am not an attorney and cannot answer this question.**

23.     State with specificity the substance of the conversations referenced in paragraph 14, 16 and 18 of the complaint, including in your response the identity of the referenced member of the Shelton Police Department, the identity of any witnesses present during the conversations, the exact date and time at which the conversations took place, and what was said by both the plaintiff, the referenced member of the Shelton Police Department, Officer Kudrak, Detective O'Donoghue and the plaintiff's wife during those conversations.

**RESPONSE:**

**The substance of the conversations are mentioned above in #21.**

**June 9, 1999, with Officers Casertano, the son, He said: "You have 10 minutes to get out the house and don't go back unless escorted by an officer". I was still in my pajamas when he broke into my home. I said: "Since you are an officer I would like you to be my escort". He said nothing. He still demanded I leave immediately. I asked him two more times to be my escort so I can gather up some things other than the shirt on my back. Again, he said nothing but asked me to leave. The Sheriff was also there but quickly got into her car once she handed me the restraining order and divorce petition. I then went to police headquarters where I was greeted by Officer Casertano, the father, who was behind a bullet proof window. Once I told him my name and asked for a police escort he looked at me angrily he said: "Did you do that to your wife"? I said: "Do what, what are you talking about?" He then said: "You've been served. There's nothing more to talk about." He then turned around and walked away without saying a word. I then walked out of the building. Carol Gorman was not at home.**

**June 10, 1999 was with officer Youd as mentioned above in #21.**

**August 28, 1999, was with officer Kudrak at my home . He ordered, not instructed, my son George to not come inside the house but to stay on the driveway located over 30 feet from the entrance to the house. Once inside I took out a small Kodak disposable camera and started to take a picture. Immediately without asking Carol Gorman he put his hand in front of the camera and said: "No pictures" I told him my attorney instructed me to take pictures . I even asked him to ask Carol Gonnan. He repeated: "No pictures."  When I tried to get into the locked office room he said: "You can't go in there." I said: "Why not." He replied: "She said you can't go in there. Since she said you can't go in there, you can't go in there." When I tried to remove the box of silverware which she admitted belonged to me she said she would prefer I not take it but will return it to my attorney's office next**

week. Officer Kudrak then said to me even after he heard her admit that it belonged to me: "Since she told you can't take it with you now, you can't take it now."

24. Describe in detail the areas of the marital home which the plaintiff was restricted from accessing, as referenced in paragraph 16 of the complaint, including in your response the basis claimed by the plaintiff's wife for refusing access to the specified areas.

**RESPONSE:**

**The area of the home in question is the entire home as far as being restricted from taking pictures and the office room which was locked. Carol Gonnan offered no reason for the restriction because Officer Kudrak didn't ask her. It was as if it was all pre-arranged before I came into my home. He asked her no questions. That's why I said he acted as if he were her escort instead of my paid escort.**

**Det. O'Donoghue, in August of 2000, acted hostile toward me in the presence of my attorney(Giacci) when he threatened to imprison me for false accusations of theft. Attorney Giacci had to appease him in a third party manner. His attitude was totally uncooperative. He said, matter of factly, that he asked Carol Gorman if she may have taken anything from my home that didn't belong to her. He said, "She said, `No'. Now what else do you expect me to do?" I said, "Why can't you go inside her home with me and look." He said, "It's not that simple."**

25. Explain in detail the basis for your allegation that the acts of the individually named defendants were intentional and were inspired by malice as stated in paragraph 19 of the complaint.

**RESPONSE:**

**Both Officer Castano and his father acted in a hostile manner toward me. We later learned that Carol Gorman had circulated photos of her broken nose to the Shelton Police as well as the State Prosecutor's Office, Battered Women, etc. Even when the Shelton police locked me up in jail every time I asked for anything simple like a cup for water or toilet paper they just laughed through the speaker. I had to wait two hours before I got anything, even then I was constantly on camera and literally had to beg for anything. I called every 15 minutes but was ignored except for the laughter . When they did speak to me it was a gruff "Yeah, whadda ya want?", followed by laughter. Everyone was obviously pre-**

dispositioned by the photographs of Carol Gorman. It was as if they were mad at me for what I did to her and they were going to make me pay. The truth is that I was the one battered in my own home of then 24 years and never laid a finger on her or anyone else in my life. We proved in court that it was Carol Gorman who was mean spirited and abusive and we had all the proof on audio tape and other documented evidence. Carol Gorman was our best witness (on tape). The above description was from the Judge herself. She committed perjury on the witness stand because she lied on the witness stand to many, many questions asked of her by attorney Giacci. Even her three elderly aunts wanted to testify against their niece. They gave testimony to attorney Giacci at his office one Sunday that their niece was refused by her own mother Mary Gorski (Carol Gorman's real name )to live with her after she divorced her second husband Norman Rosenthal who also was willing to testify against her in court. She (Mrs. Gorski) was afraid of her own daughter. I knew nothing about Carol Gorman's two former husbands since she told me she had never married before. Her aunts also said that after she conned her way back into her mother's house on the promise that she would take care of her mother since her mother had cancer . The aunts told Attorney Giacci that she beat up her own mother, withheld her mother's cancer medication and poured hot water over her mother's head. Within months her mother died and Carol Gorman (Gorski), being an only child, inherited her mother's house and then sold it. Her aunts are very angry with her because of what she did to their sister. Carol Gorman's mother was 83 when she died.

According to her aunts, Carol Gorman had been and still is a chain smoking, alcoholic, drug addict since her high school days. And when I says drugs I mean all the drugs. Her father died of alcoholism at the age of 55 the age that Carol Gorman is now. According to her second husband it's amazing that with all the alcohol she consumes she is still alive. Yet she is very smart and has the ability to convince you that she is Mother Theresa.

**REQUEST FOR PRODUCTION**

The defendants hereby request that the plaintiff provide counsel for the defendants with copies of the documents described in the following request for production, or afford counsel for said defendants the opportunity or, where requested, sufficient written authorization, to inspect, copy, photograph or otherwise reproduce said documents.

1.  All documents related to, identified by, or used in answering defendant's interrogatories.

**RESPONSE:**

**Those in my possession are attached.**

      2.      All correspondence and other documents relating to the allegations in the Complaint.

**RESPONSE:**

**Those in my possession are attached.**

      3.      All documents relating to any communication that the plaintiff had with the defendants regarding the incident alleged in the Complaint.

**RESPONSE:**

**Attached.**

      4.      All documents, statements, recordings, or any other tangible items which support or relate to Plaintiff's claims of alleged damages as a result of the matter in question.

**RESPONSE:**

**Attached.**

      5.      A copy of any non-privileged statements of any party in this lawsuit concerning this action or its subject matter.

**RESPONSE:**

**None I am aware of.**

      6.      All documents, statements, recordings, or any other tangible items pertaining to, identified by or referred to in the answers to Interrogatory #8.

**RESPONSE:**

**Those in my possession are attached.**

      7.      Copies of any statements disclosed in response to the foregoing

interrogatories.

**RESPONSE:**

**I am not in possession of any statements.**

      8.    Copies of any expert reports or opinions for expert witnesses identified in response to these interrogatories.

**RESPONSE:**

**Not applicable.**

      9.    Any documents, notes or memoranda concerning conversations, meetings, discussions or conferences identified in response to these interrogatories.

**RESPONSE:**

**Attached.**

      10.    Copies of any covenant not to sue, release, discharge or forbearance agreement identified in response to these interrogatories.

**RESPONSE:**

**Not applicable.**

      11.    All property damage bills that are claimed to have been incurred as a result of said incident.

**RESPONSE:**

**I do not have any property damage bills to produce.**

      12    All bills for each item of expense that is claimed to have been incurred in the answer to Interrogatory #9.

**RESPONSE:**

**Attached.**

      13.    A copy of any photographs identified in the answers to Interrogatory #13.

**RESPONSE:**

**None.**

      14.    All receipts and/or other evidence of acquisition received by the plaintiff relative to the items designated in response to interrogatory #14.

**RESPONSE:**

**This was a wedding gift from my parents, I have never had receipts.**

      15.    All orders and modifications referenced in paragraphs 10, 11, 12 and 15 of the complaint and/or described in response to Interrogatory #18.

**RESPONSE:**

**Those in my possession are attached.**

      16.    The municipal policy referenced in paragraph 13 of the complaint and identified in response to Interrogatory #22.

**RESPONSE:**

**I am not in possession of such a document.**

      17.    Any documents which support plaintiff's allegations in paragraph 17 of the complaint that the sterling silverware set had been mistreated and that parts of it were missing.

**RESPONSE:**

**I do not have any documents of this nature. I am willing to present the set for inspection with reasonable notice.**

                THE PLAINTIFF, GEORGE FEDOR

                By_____
                JOHN R. WILLIAMS
                Federal Bar No. ct00215
                Williams and Pattis, LLC
                51 Elm Street, Suite 409
                New Haven, CT 06510
                (203) 562-9931
                His Attorney

**CERTIFICATION**

     This is to certify that on this 9th day of May, 2003, a copy of the foregoing Interrogatories and Requests for Production was mailed, postage prepaid, to:

Peter G. Kruzynski, Esq.
Susman, Duffy & Segaloff, P.C.
P.O. Box 1684
New Haven, CT 06507-1684

                _____
                JOHN R. WILLIAMS