UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE FEDOR, | : | |
|     Plaintiff | : | Civil Action No. 3:02CV1489(CFD) |
| | : | |
| v. | : | |
| | : | |
| JOSEPH KUDRAK, et. al. | : | |
|     Defendants. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff George Fedor brought this action under 42 U.S.C. § 1983 against the Town of Shelton and two of its police officers, Joseph Kudrak and Neil O'Donoghue. Fedor claims that because he was involved in divorce proceedings, he was not provided the same law enforcement services by the defendants as those in other situations. Fedor claims that he was deprived of access to the courts, equal protection of the law, freedom from unreasonable seizure, and substantive due process under the United States Constitution. Pending is the defendants' motion for summary judgment. For the following reasons, that motion is granted.

**I    Background**[1]

At some point in 1999, Fedor's wife filed for a divorce in the Connecticut Superior Court. In the summer of that year, the state court issued a series of protective orders prohibiting Fedor from entering his former home in Shelton, Connecticut, and requiring that he have no contact with his wife.

---

[1] The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

On August 23, 1999, an agreement concerning the removal of personal property from the Shelton home was signed by Fedor and his wife and was approved as an order by the Superior Court. The agreement provided that Fedor could enter the Shelton house on August 28, 1999, at 11:00 a.m. to "remove his personal items;" however, his entry was subject to numerous restrictions. For example, a police officer had to be present, Fedor's entry was limited to two hours, and he was not permitted to bring any other individual with him. The agreement provided that he could remove "the contents of the bottom of his closet and all his mail, and the contents of the top drawer of [his wife's] dresser." Additionally, the order attached a schedule of particular personal items Fedor could remove. The parties here dispute whether that agreement allowed him to take a silverware set that had been a present to him and a previous wife, as well as which specific areas of the house were covered by the word "premises" in the order.

Fedor was accompanied by Officer Kudrak on August 28 to the Shelton home, and he removed certain items, but was not permitted to enter a room he formerly used as an office. He was also not permitted to remove the silverware set.

On December 21, 1999, the silverware set was returned to Fedor. He claims, however, that a number of pieces of the set were missing, allegedly kept by his wife. On either May 26 or 27, 2000, Fedor made a complaint to the Shelton police department concerning the missing pieces of the silverware set, as well as the condition of certain pieces that were returned to him. In August 2000, Fedor met with Officer O'Donoghue concerning his complaint. O'Donoghue did not arrest Fedor's wife or apply for a search warrant of her home, as requested by Fedor.

Fedor subsequently brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fourth and Fourteenth Amendment rights under the United States Constitution. The

defendants have moved for summary judgment.

**II       Summary Judgment Standard**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998).  Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor.  Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material

fact. Fed. R. Civ. P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Maffucci, 923 F.2d at 982.

**III     Discussion**

The defendants move for summary judgment on all claims in the complaint. Specifically, they argue that (1) Fedor has failed to state a proper equal protection claim; (2) defendants Kudrak and O'Donoghue are entitled to qualified immunity on that claim; (3) Fedor has failed to state a proper § 1983 claim against the town of Shelton; and (4) Fedor has failed to raise claims for interference with his right to access to the courts, violation of his Fourteenth Amendment rights to substantive due process, or unreasonable seizure under the Fourth Amendment. Fedor responded only to the first three of those claims, and asserts that there are genuine issues of material fact. Fedor does not address the latter claims.[2]

---

[2] Federal Rule of Civil Procedure 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, *if appropriate*, shall be entered against" him. Fed. R. Civ. P. 56(e)(emphasis added). The Second Circuit has made clear that if the moving party's evidence does not satisfy the burden of production, "then summary judgment must be denied even if no opposition evidentiary matter is presented." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (internal quotations, citation & emphasis omitted). Defendants did not initially address the right of access to the courts,

A.      **Equal Protection**

The Fourteenth Amendment to the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  To analyze the plaintiff's equal protection claim, the Court "must decide, first, whether [the challenged state conduct] operates to the disadvantage of some suspect class or impinges a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict scrutiny. . . . If not, the scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination. . ." San Antonio School District v. Rodriguez, 411 U.S. 1, 17 (1973).  Courts, including this one, have found that, "suspect classes are defined as groups who historically have been subjected to discrimination; whose obvious, immutable, or distinguishing characteristics mark them as a discrete community; or who are politically powerless due to their minority status." See, e.g., Leocata v. Wilson-Coker, 343 F. Supp.2d 144, 150 (D.Conn. 2004).

The defendants moved for summary judgment on Fedor's equal protection claim on the basis that he has not alleged that he is a member of a protected class.  In response, Fedor argues that the Shelton police department treats divorcing spouses differently from all other citizens.

---

substantive due process, or Fourth Amendment claims in their summary judgment materials.  The Court permitted them to file supplemental papers on these grounds.  Defendants did so, but plaintiffs failed to respond, although also permitted to do so.  Because the defendants have satisfied their burden of production, summary judgment is granted for the defendants as to the claims for access to the courts, violation of substantive due process, and unreasonable seizure.  These claims are addressed infra in the text.

Fedor alleged in his complaint that he was "deprived of his right to equal protection of the law as a result of the town's policy refusing to investigate or otherwise consider complaints of theft arising in the domestic context." The class he asserts his membership in is therefore "divorcing spouses."[3] Fedor cites no decision recognizing such a group as entitled to "protected class" status for equal protection analysis. Moreover, the group identified by Fedor does not by its nature necessarily involve race, sex, or any other suspect classification for this inquiry. Therefore, the disputed "policy does not burden a fundamental right or involve a suspect or quasi-suspect classification such as race, sex, alienage, or national origin. That policy, therefore, is "presumed to be valid and will be sustained if the classification. . . is rationally related to a legitimate state interest." Myers v. County of Orange, 157 F.3d 66, 75 (2d Cir. 1998) citing City of Cleburne, 473 U.S. at 440.

The issue before the Court, then, is whether the specific conduct underlying Fedor's equal protection claim survives the scrutiny of rational basis. The conduct in question is Kudrak's refusal to allow Fedor to enter his office at the Shelton home and remove the silverware set, and O'Donoghue's failure to seek an arrest warrant or search warrant based on the criminal complaint Fedor filed. As to the latter, O'Donoghue stated in his affidavit that he "fully investigated" Fedor's complaint and did not seek to obtain a search warrant for his wife's home because of insufficient evidence. As to the equal protection claim against Kudrak, the agreement which defined which items Fedor could take from his wife's home specified certain property of his

---

[3]The defendants also argue in their motion for summary judgment that Fedor fails to state a selective prosecution or class-of-one equal protection claim. In his memorandum in opposition, Fedor fails to respond to this line of argument, or otherwise indicate that he is asserting such a claim. Consequently, the Court finds that such a claim is not being asserted.

former wife,[4] but did not mention the silverware. Most important, Fedor presents no substantial evidence that either defendant police officer treated him or any other citizens involved in domestic disputes differently from others. The only evidence presented is plaintiff's statement that O'Donoghue told him that Shelton police officers did not like "to get involved in cases between husbands and wives or ex-spouses." That is hardly enough to raise a genuine issue of material fact that the officers discriminated against people involved in domestic disputes, especially in light of another portion of O'Donoghue's affidavit, in which he denied he made that statement and also stated that there was no written policy for the Shelton police stating that domestic matters should be treated differently from others. The latter is not challenged by Fedor. In the context of rational basis review, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," Heller v. Doe, 509 U.S. 312, 320 (1993). Fedor does not meet this burden, as he fails to assert that the defendants' conduct was not rationally related to the legitimate state interest in law enforcement or that his claimed class was, in fact, treated differently by the defendants. The Court, therefore, grants summary judgment in favor of the defendants because Fedor has failed to sufficiently assert an equal protection claim.

### B.   Qualified Immunity

The defendants next claim that, even if Fedor's right to equal protection was violated, they are entitled to qualified immunity. Fedor failed to respond to this argument in his

---

[4]Fedor had been married previously and he claims that the silverware set had been given to him and that former wife. The schedule of personal items that was part of the August 23, 1999 order contained other items from that earlier marriage.

memorandum in opposition.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). The policy underpinnings of this doctrine involve "strik[ing] a balance 'between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury.'" Locurto v. Safir, 264 F.3d 154, 162-63 (2d Cir. 2001) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 924-25 (2d Cir. 1991)). Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001).

As the Second Circuit has summarized:

> A threshold question for triggering the qualified immunity doctrine is whether an official's conduct violated a constitutional right . . . . If so, we then must decide whether qualified immunity attaches. Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions. . . . The presumption in favor of finding qualified immunity is necessarily high, protecting all but the plainly incompetent or those who knowingly violate the law.

Connecticut v. Crotty, 346 F.3d 84, 101-02 (2d Cir. 2003) (citations and quotations omitted).

Fedor has not asserted, nor is the Court aware, of any precedent in this Circuit that clearly establishes a requirement of police officers to investigate and make arrests in domestic matters the same as in other types of investigations. The Second Circuit did hold in Myers v. County of

Orange, that "a policy by a police department or district attorney's office favoring an initial complainant over a later one without giving primary regard to the particular facts involved in the case violates the Equal Protection Clause of the Fourteenth Amendment."  157 F.3d 66, 69 (1998).   In that case, the truth-seeking process was distorted by efficiency concerns, thus depriving the second responder of the same fair examination of his complaint as the first complainant. Id. at 75.  The logic of Myers indicates that a policy of a police department against investigating certain claims may not withstand even rational basis review.  However, that principle has not been extended by the Second Circuit to requiring that all complaints be treated the same, whatever the context.  More specifically, that Court has not held that complaints arising in the context of divorce proceedings must always be treated the same as those arising in other contexts. Cf. Navarro v. Block, 72 F.3d 712 (9th Cir. 1995) (striking down a city policy not to respond to 911 calls made for potential domestic violence).  Although it may very well be that our Court of Appeals will hold in the future that no distinction should be made as to domestic cases, and it may very well be advisable police practice, the first prong of the qualified immunity test is satisfied here: it was not clearly established at the time of Kudrak and O'Donoghue's actions that they must treat Fedor's complaint the same as any other, regardless of the fact that it arose from a relationship involved in a contentious divorce proceeding.

      The Court also finds that it was objectively reasonable for Officer O'Donoghue to believe in the lawfulness of his action – i.e., the lawfulness of not further investigating and arresting Fedor's wife or searching her home for pieces of the silverware set.  As mentioned, the silverware set was not specifically listed on the schedule attached to the August 23, 1999 order.  Courts have consistently expressed an unwillingness to intrude upon a police officer's discretion

to decide when to effectuate an arrest. See, e.g., Lunini v. Grayeb, 395 F.3d 761, 770 (7th Cir. 2005) (finding that an officer's failure to arrest an individual involved "an ordinary exercise of police discretion" and thus it was "not obvious how the police officers' failure to arrest . . . implicates [the plaintiff's] rights under the Equal Protection Clause in the first place"); Ricketts v. City of Columbia, 36 F.3d 775, 780 (8th Cir. 1994) (noting that an "officer's discretion to determine when to arrest" is "a fundamental part of our criminal system"); see also McCleskey v. Kemp, 481 U.S. 279, 297 (1987) (noting, as a general matter, that "discretion is essential to the criminal justice process"). The same is true as to Kudrak's interpretation of the August 23, 1999 list and his not permitting Fedor to remove the silverware set. A reasonable police officer would likely conclude that Fedor could not take the silverware because of its absence from the list. Finally, as noted in the previous section, there has been insufficient evidence to raise a genuine issue of material fact that any discriminatory policy existed or that the two defendant officers here acted on that basis.

Therefore, the defendant officers are entitled to the protections of qualified immunity. Summary judgment is granted as to this issue.[5]

### C.     Municipal Liability

Defendant Town of Shelton next argues that it is entitled to judgment as a matter of law because Fedor has failed to assert a legally sufficient § 1983 claim against it. In particular, the Town argues that there is no evidence of a town policy treating domestic relations complaints

---

[5]Because it is not before the Court at this time, defendants' entitlement to qualified immunity as to other alleged constitutional violations will not be addressed.

differently by the police department. Fedor maintains that there are genuine issues of material fact, and, therefore, summary judgment is not appropriate.

Generally, a municipality may be liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). In order to state a claim under Monell, therefore, a plaintiff must plead and prove: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).

Again, although Fedor alleges that the Town had a policy of not pursuing criminal complaints arising between spouses or ex-spouses, he has not provided this Court with substantial evidence that demonstrates the existence of such a policy. The allegation in the complaint that O'Donoghue stated that such a policy or custom existed and Fedor's interrogatory answer that O'Donoghue stated that "the Shelton police department doesn't like to get involved in cases between husbands and wives or ex-spouses" has been explicitly contradicted by O'Donoghue's affidavit and, even if it were true, is not sufficient to show a policy of the department. Fedor has not supplied the Court with any additional evidence that would generate a genuine issue of material fact as to the existence of such a policy or custom, and O'Donoghue specifically denied one existed in his affidavit. O'Donoghue was also not a final policymaking official of the Town, and his actions would not constitute the adoption of a policy of custom. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."

11

City of Oklahoma City v. Tuttle, 471 U.S. 808, 820-24 (1985).  In other words, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); see also Tobin v. Doe, 2005 WL 701274 (D.Conn. Mar. 28, 2005) (citing cases and noting that "[o]ne incident of improper action, without more, is insufficient to demonstrate the existence of such a municipal policy or custom unless taken by a final policymaking official").

Fedor has not alleged or argued that O'Donoghue's actions in response to the criminal complaint represent a municipal policy, or that O'Donoghue held a position within the Shelton police department that would give him final policymaking authority.  Compare Inturri v. City of Hartford, 365 F.3d 240, 245 n.6 (D.Conn. 2005) (plaintiff properly alleged the challenged policy was created and adopted by Chief of Police, who was a "municipal policy maker" for purposes of Monell).

Consequently, the Court finds that defendant Town of Shelton is entitled to judgment as a matter of law on the equal protection claim.  Fedor has also not demonstrated that the remaining claims in the complaint are based on any town policy; they also are dismissed as to Shelton.

### D. Access to the Courts[6]

Defendants next seek summary judgment on Fedor's access to the courts claim. "Whether an access [to the courts] claim turns on a litigating opportunity yet to be gained or an opportunity

---

[6] As mentioned in footnote 2, supra, plaintiff has not responded to the defendants' request for summary judgment on the access to the courts, Fourteenth Amendment substantive due process, or Fourth Amendment claims.

already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." Christopher v. Harbury, 536 U.S. 403, 414-415 (2002). As the Supreme Court has recognized, the right to access the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of the court." Id. at 415. An essential element of any access to the courts claim, therefore, is the underlying cause of action. Indeed, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Id. at 416. Fedor alleges in his complaint that he was "constructively deprived of his right to access to the courts in that officer Kudrak refused to enforce a court order." (Complaint, ¶ 20). This allegation falls short of the required elements of an access claim. First, Fedor does not allege that he was actually prevented from initiating litigation. Indeed, at the time of the conduct he was involved in the state divorce proceedings, and he subsequently brought this case, which contains multiple causes of action. Second, each of the causes of action asserted in Fedor's complaint provide adequate, independent remedies. Finally, Fedor could have raised his complaints concerning Kudrak allegedly limiting his access to his office and the silverware set in the divorce proceeding in the Connecticut Superior Court. As to O'Donoghue's failure to continue the investigation of his wife, Fedor still had discovery opportunities in his divorce action through which he could pursue this information.[7] Therefore, Fedor does not, as a matter of law, assert an access to the

---

[7] The only failure-to-investigate claims which have recognized abridgments of the right of access to the courts are those where the investigating official concealed or destroyed evidence, or otherwise affirmatively "obstruct[ed] legitimate efforts to seek judicial redress." Whalen v. County of Fulton, 126 F.3d 400, 406 (2d Cir. 1997); see also Barrett v. United States, 798 F.2d 565 (2d Cir. 1986) (affirming that allegations that various government defendants conspired to

courts claim. Summary judgment is therefore granted for the defendants on this claim.

### E. Fourteenth Amendment: Substantive Due Process

Defendants next seek summary judgment on Fedor's substantive due process claim. "A due process violation occurs only when the government's conduct, standing alone, is so offensive that it 'shocks the conscience.'" Labensky v. Nassau, 6 F. Supp.2d 161, 171 (E.D.N.Y. 1998), quoting United States v. Chin, 949 F.2d 393, 398 (2d Cir. 1991). Indeed, "[i]t is well settled that, where 'the alleged right . . . cannot be considered so rooted in the traditions and conscience of our people as to be ranked fundamental,' notions of substantives due process will not apply." Local 342 v. Huntington 31 F.3d 1191, 1196 (2d Cir. 1994), quoting Reno v. Flores, 507 U.S. 292, 303 (1993)(internal citations omitted).

None of the deprivations that Fedor alleges or presents in his summary judgment materials rises to the level of a deprivation of substantive due process. Indeed, "[t]he creation of a personal entitlement to something as vague and novel as enforcement of restraining orders cannot simply go without saying." Castlerock v. Gonzalez, ___ U.S. ___, 125 S. Ct. 2796, 2809 (2005)(internal citations omitted). Even construing the evidence in Fedor's favor, there is an insufficient factual basis to support a deprivation of substantive due process rights. First, as was discussed above, Fedor did not have a protected right as a divorcing spouse to have his complaint

---

cover up a death stemming from a medical experiment were sufficient to allow administrator of decedent's estate to pursue a denial-of-access claim); Small v. City of New York, 274 F. Supp. 2d 271 (E.D.N.Y. 2003) (holding that allegations that police intimidated witnesses, destroyed material evidence, and delayed administering a sobriety test to a fellow officer who struck and killed pedestrians in an auto accident stated a valid denial-of-access claim under § 1983). No such evidence has been presented here.

against his ex-wife investigated further. Even if he did, it is not clear that such a right should be considered fundamental. Second, Fedor may be asserting a deprivation of a right to property based on his limited access to the Shelton home, the delay in reacquiring the silverware set, or its missing pieces. None of those deprivations – assuming that they were violations of Fedor's fundamental right to property, which they likely were not – resulted solely from the conduct of the defendants. Rather, they resulted from the Superior Court's order, and the officer's interpretation of it. Also, as the defendants correctly point out, Fedor had remedies available to him at the time of the alleged deprivations. For example, he could have sought clarification of the court order from the Superior Court judge if he felt he should have been allowed greater access to the Shelton home. He also could have brought a civil action for conversion in the state courts, if he felt that his ex-wife had stolen his property from him.[8] Finally, even crediting Fedor's statements, the conduct of O'Donoghue and Kudrak could hardly be deemed such as to "shock the conscience." Ultimately, there is no basis for Fedor's substantive due process claim.

### F.     Fourth Amendment: Seizure

Finally, defendants seek summary judgment on Fedor's Fourth Amendment claim. "[A] seizure deprives the individual of dominion over his or her person or property." Horton v. California, 496 U.S. 128, 133 (1990). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v.

---

[8] "Under the law of Connecticut, an act of conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights, or an act of dealing with the property rights of that person in a manner adverse to him, inconsistent with his right of dominion and to his detriment." General Acci. Group v. Gagliardi, 593 F. Supp. 1080, 1090 (D. Conn. 1984).

Cook County, 506 U.S. 56, 61 (1992), quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984). In assessing a Fourth Amendment violation a reasonableness standard applies. Soldal, 506 U.S. at 71.

Fedor alleges in his complaint that he "suffered an unreasonable seizure in that he was prevented from full access to his home, as was required under the terms of a court order." (Complaint, ¶ 23). Even when the evidence is construed in his favor, Fedor does not assert a claim for unreasonable seizure under the Fourth Amendment, however. First, he does not raise a question of material fact regarding the reasonableness of the defendants' enforcement of the court order. Second, the record fails to reveal any support for Fedor's allegation that the defendants' enforcement of the court order and the agreement between the parties was a seizure of his property. Rather, it was pursuant to the order of the Superior Court establishing ground rules for the inspection of joint marital property and an orderly removal of certain items in that property. Indeed, Fedor alleges the opposite: he alleges that he was deprived of access to his property, certainly not that it was taken from him by the police. Specifically, Fedor claims that the defendants did not enforce the court order correctly, therefore preventing from collecting all of his belongings from the Shelton home. This situation does not amount to a violation of Fedor's Fourth Amendment rights against unreasonable seizures.

## IV.     Conclusion

The motion for summary judgment **[Doc. #33]** is **GRANTED**, and judgment is entered for the defendants.  The clerk is ordered to close this case.

SO ORDERED this     14th     day of March, 2006, at Hartford, Connecticut.


    /s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**